Filed 1/21/26  P. v. Trejo CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>PETE TREJO, JR.,<br><br>　　　Defendant and Appellant. | B338654<br><br>(Los Angeles County<br>Super. Ct. No. KA089026) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, Ronald S. Coen, Judge.  Affirmed.

　　　Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Pete Trejo, Jr. (Trejo), appeals from the trial court's order denying his petition for resentencing under Penal Code section 1172.6 (former § 1170.95).[1] Because Trejo is ineligible for relief as a matter of law, we affirm.

## BACKGROUND

### I. Facts[2]

In 2009, Trejo was a member of the 12th Street Sharks gang. (*Trejo*, *supra*, B259298 at p. 2.) In November 2009, a fellow gang member, Robert Caballero (Caballero), sent Trejo a text message asking for his help, explaining that Caballero needed to "'fix'" "'two hoes that [were talking] about [his] bike ride'" which referred to an incident earlier that year in which Caballero "had been riding on a bicycle and asking about [a murder victim] moments before [he] was gunned down[.]" (*Trejo*, *supra*, B259298 at p. 3.) "When Caballero asked if Trejo knew what he meant, Trejo responded, 'GT THT.'" (*Ibid.*)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) For simplicity, we refer to the section by its current numbering.

[2] We provide these facts, drawn from our nonpublished opinion in Trejo's direct appeal from his conviction (*People v. Trejo* (May 26, 2016, B259298) [nonpub. opn.] (*Trejo*)), for context only.

2

Soon thereafter, Trejo got in a car with Caballero and two women, Jessica Garcia (Garcia) and Lorainne Minjarez (Minjarez).  (*Trejo*, *supra*, B259298 at p. 3.)  The group was driven to Mount Baldy, and exited at a roadside turnout.  Trejo retrieved a shovel from the trunk before the driver left.  (*Ibid.*)

"Caballero, Minjarez and the others picked a path through the chaparral away from the turnout.  As they walked, Trejo tested the dirt with the shovel 'a couple of times.'  When Minjarez saw what Trejo was doing, she told Caballero she wanted to go back.  Caballero then asked her what she thought of death and began pushing her forward along the path.  When the group was approximately a quarter of a mile away from the turnout, Caballero or Trejo determined that the 'dirt was rich.'  Caballero ordered Minjarez and Garcia to sit on a nearby rock.  As Trejo began digging a grave, Caballero asked the women how they wanted to die—by gunshot, by strangulation, or by being 'chopped up.'  Minjarez began to sob, asking why.  Caballero replied that she knew too much and that he 'had to do it.'  As Minjarez and Garcia looked on, Caballero and Trejo took turns digging the grave.

"Someone slipped a rope around Minjarez's neck.  Trejo led Garcia, her wrists bound, behind a rock, leaving Caballero with Minjarez.  Garcia heard Caballero tell Minjarez that he loved her and that it was 'for the best' before he announced that 'it's time.'  Garcia heard the sound of feet scuffling on the dirt as Caballero said, 'Go to sleep' again and again.  A few minutes later, the scuffling stopped.

"Caballero whistled.  Trejo eventually led Garcia back around the rock, where she saw Minjarez lying face down in the dirt, dead.  Caballero then ordered Garcia to cut the rope away

3

from Minjarez's neck, to stab Minjarez 18 times in the neck, and to urinate on her body so that Garcia's DNA would be left behind. Caballero led Garcia back to the turnout, as Trejo remained behind to bury Minjarez's body in a shallow grave." (*Trejo*, *supra*, B259298 at pp. 3–4.)

## II.    Conviction, Sentence and Direct Appeal

On August 14, 2014, a jury convicted Trejo of first degree murder (§ 187, subd. (a)).  As relevant here, it also found true the special circumstances that Trejo "intentionally killed [Minjarez] by means of lying in wait" (§ 190.2, subd. (a)(15)) and committed the murder while "engaged in the commission of the crime of kidnapping" (§ 190.2, subd. (a)(17)).  Trejo was also convicted of kidnapping Garcia.  (§ 207, subd. (a).)

The trial court sentenced Trejo to life in prison without the possibility of parole, plus an additional 16 years for various sentencing enhancements.  On direct appeal, this court struck one enhancement and remanded for resentencing.  (*Trejo*, *supra*, B259298 at p. 22.)  In all other respects, we affirmed the judgment.  (*Ibid.*)

## III.    Resentencing Petition and Appeal

In October 2021, Trejo filed his third and operative petition for resentencing under section 1172.6.[3]  The trial court appointed counsel and ordered briefing.  The prosecution opposed, and Trejo filed a reply.[4]

---

[3]    Trejo filed two prior resentencing petitions, which were summarily dismissed.  It does not appear that Trejo appealed from either of those denials.

[4]    Trejo also filed a new petition for resentencing under section 1172.75.  That petition is not at issue in this appeal.

4

The trial court denied the petition.  The court found that Trejo was ineligible for relief under section 1172.6 because both the lying in wait special circumstance instruction and the aiding and abetting instruction "required an intent to kill[.]"

Trejo timely appealed.

## DISCUSSION

### I.  Applicable Law and Standard of Review

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) substantively amended sections 188 and 189 to "eliminate[ ] natural and probable consequences liability for murder as it applies to aiding and abetting[ ] and limit[ ] the scope of the felony-murder rule. [Citations.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  While the bill narrowed the scope of felony murder and eliminated the natural and probable consequences doctrine and other forms of imputed malice as a basis for finding a defendant guilty of murder, "a defendant may still be liable for murder as a direct aider and abettor because a direct aider and abettor must possess malice aforethought." (*People v. Lopez* (2024) 99 Cal.App.5th 1242, 1248.)

Senate Bill No. 1437 also added a procedural mechanism allowing defendants who could no longer be convicted of murder because of the changes made to sections 188 and 189 to petition for resentencing.  (*Lewis, supra*, at p. 959.)  To obtain relief, a defendant convicted of murder must allege that he could have been convicted under the felony murder rule, murder under the natural and probable consequences doctrine, or another theory of imputed malice (§ 1172.6, subd. (a)(1)); and could not now be convicted "because of changes to [s]ection 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).

5

When a properly pleaded petition for resentencing is filed, the trial court must conduct a prima facie analysis to determine the defendant's eligibility for relief. (§ 1172.6, subds. (b)(3) & (c); *People v. Strong* (2022) 13 Cal.5th 698, 708; *Lewis, supra,* 11 Cal.5th at pp. 957, 960.) "[T]he prima facie inquiry . . . is limited . . . . " '[T]he court takes [a] [defendant]'s factual allegations as true and makes a preliminary assessment regarding whether the [defendant] would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause' " " and set the matter of an evidentiary hearing. (*Lewis*, at p. 971.)

In making this assessment, the trial court may consider the defendant's record of conviction. (*Lewis, supra,* 11 Cal.5th at pp. 970–971.) In particular, if jury instructions delivered at trial foreclose the possibility, as a matter of law, that a defendant was convicted on a now-invalid theory of murder, the trial court may deny the petition at the prima facie stage. (See *People v. Curiel* (2023) 15 Cal.5th 433, 470.)

We review de novo a trial court's decision to deny a section 1172.6 petition at the prima facie stage. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101.)

## II. Analysis

The record here conclusively establishes the jury convicted Trejo based on his intent to kill the victim. The jury returned two special circumstance findings regarding the murder conviction, each of which required a specific finding that Trejo intentionally killed the victim. (CALJIC. No. 8.81.15.1 ["To find that the special circumstance [of] . . . murder by means of lying in wait is true, each of the following facts must be proved: [¶] [(1)] [T]he defendant intentionally killed the victim . . . ."; CALJIC

6

No. 8.81.17.1 ["To find that the special circumstance [of] . . . murder in the commission of kidnapping is true, it must be proved: [¶¶] [(2)] [t]he defendant had the specific intent to kill."]; see also CALJIC 1.11 [the word "defendant" applies "to each defendant"]).) We presume the jury understood and followed these instructions (*People v. Sanchez* (2001) 26 Cal.4th 834, 852), especially where, as here, the language of the instruction was repeated on the verdict form, and required the jury to find true that Trejo "intentionally killed the victim by means of lying in wait[.]"

Trejo argues that the general special circumstances instruction contained in CALJIC No. 8.80.1 "created an ambiguity" suggesting the jury could return true special circumstance findings if he had either "an intent to kill" or "was a major participant who acted with reckless indifference to human life."[5] He says this is especially so, because his trial was held in 2014, before our Supreme Court clarified legal standards guiding interpretation of the terms "major participant" and "reckless

---

[5]     CALJIC No. 8.80.1 reads, in relevant part: "If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime of kidnapping which resulted in the death of a human being."

indifference to human life" (*People v. Banks* (2015) 61 Cal.4th 788; *People v. Clark* (2016) 63 Cal.4th 522). Trejo urges there remains a possibility that he was convicted based on an improper theory of murder liability.

Not so. Our Supreme Court has declared "'[i]t is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' [Citation.] "'A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant."'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433 (*Bryant et al.*).) We cannot presume the jury misunderstood or failed to follow the court's instructions on the law. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

It is also not reasonably likely that the jury misinterpreted the instructions. As described above, both special circumstances jury instructions (CALJIC Nos. 8.81.15.1, 8.81.17.1) required the jury to find that Trejo harbored an independent intent to kill the victim. These intent requirements correspond with the first half of CALJIC No. 8.80.1, which provides that a special circumstance finding can be found true when an aider and abettor acts with intent to kill. Trejo's theory of instructional ambiguity would require the jury to ignore the express intent requirements in CALJIC Nos. 8.81.51.1 and 8.81.71.1, and instead apply the alternate major participant standard, which appears nowhere else in the jury instructions and was not on the verdict form. The jury would also have to disregard the instruction to "not single out any particular sentence or any individual point or instruction

8

and ignore the others[,]" but to "[c]onsider the instructions as a whole and each in light of all the others." (CALJIC No. 1.01.)

Read together as a whole, in order to find the lying in wait and kidnapping murder special circumstance instructions true, the jury had to find that Trejo personally acted with an intent to kill.[6] (See *Bryant et al., supra*, 60 Cal.4th at p. 433 ["""[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction"""].) The jury necessarily found that Trejo intended to kill the victim. Thus, he is not eligible for relief because he could not now be convicted of murder "because of changes to [s]ection 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3)).

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
SIGGINS*

We concur:

---

[6] Our conclusion that the jury necessarily found that Trejo intended to kill the victim renders moot his alternate argument that alleged ambiguities in the aiding and abetting instructions allowed the jury to improperly apply an imputed malice theory.

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

_____, P. J.
LUI


_____, J.
RICHARDSON